# United States District Court
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

v.

HABIB, Josef K. xx/xx/1989

CRIMINAL COMPLAINT
CASE NUMBER: 18-M-1201

I, Gregory Kuspa, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the dates of April 2017 through the present in the County of Milwaukee, in the Eastern District of Wisconsin, the defendant violated:

Title 21, U.S.C., Sections 841(a)(1), 841(b)(1)(B), and 846, Distribution of, and Possession with Intent to Distribute, Controlled Substances, and Conspiracy to commit violations of Controlled Substances Offenses, including to Distribute and Possess with Intent to Distribute Controlled Substances; and Title 18, U.S.C., Section 924(c), Knowingly Possessing Firearm in Furtherance of Drug Trafficking; and Title 18, U.S.C., Section 2.

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

Continued on the attached sheet and made a part hereof:    X   Yes    ___ No

_____
Gregory Kuspa, City of Milwaukee Police Officer

Sworn to before me and subscribed in my presence,

Date: 1/9/18

_____
The Honorable William E. Duffin
United States Magistrate Judge

City and State: Milwaukee, Wisconsin

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Gregory Kuspa, being first duly sworn on oath, states as follows:

## AFFIANT'S TRAINING & EXPERIENCE

1. I am a City of Milwaukee Police Officer currently assigned to the Milwaukee Police Department, District #2 Station. I am involved in the investigation of gangs, narcotics trafficking as well as individuals prohibited from the possession of firearms. I have worked full-time as a law enforcement officer for the past fourteen (14) years.

2. I have received training in the investigation of drug trafficking. I have worked with informants in the investigation of drug and firearm trafficking in the Milwaukee area, and have participated in search warrants, investigations, and arrests in which controlled substances and drug paraphernalia were seized. Based upon my training and experience, I am familiar with the street names of various drugs in the Milwaukee area including marijuana, heroin, and cocaine, including, but not limited to appearance and street names. I am also familiar with methods that are commonly used by drug dealers to package and prepare controlled substances for sale in the Milwaukee area as well as how organizations distribute these controlled substances in Wisconsin and other areas of the United States.

3. In the past, I have relied upon informants to obtain controlled substances from dealers, have extensive experience conducting street surveillance of individuals engaged in drug trafficking activities. I have participated in the execution around a hundred search warrants where controlled substances, drug paraphernalia, drug trafficking records, firearms, firearm documents, firearm cleaning supplies, ammunition, computers, their electronic media storage devices, and cellular phones were seized; I have personally recovered and viewed photos of such items located in elaborately hidden compartments within homes of drug traffickers.

4. I also know that large-scale drug traffickers often purchase, rent / lease, and/or title their assets in fictitious names, aliases, and / or the names of relatives, associates or business entities to avoid detection of the assets by government agencies. I know that even though these assets are in names other than the drug traffickers, the drug traffickers actually own and will continue to use these assets while exercising control over them.

5. I know that it is common for drug traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, and receipts relating to the purchase of financial instruments and/or the transfer of funds and other papers relating to the transportation, ordering, sale and distribution of controlled substances. That these books, records, receipts, notes, ledgers, etc., are maintained where the traffickers have access to them; I know that it is common for large-scale drug traffickers to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences, their businesses and/or other locations over which they maintain control for the purpose of having immediate access as well as to conceal the items from law enforcement authorities.

6. I know that it is common for persons involved in large-scale drug trafficking to maintain evidence pertaining to their obtaining, secreting, transferring, concealment and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys and/or money wrappers. The traffickers within their residences, businesses and/or other locations over which they maintain dominion and control, maintain these items.

7. I also know the Currency Transaction Report (CTR) (IRS Form 4789) is required to be completed and filed with the IRS by all financial institutions on every currency transaction that exceeds $10,000. This law causes tremendous problems for drug traffickers when they attempt to negotiate their illegal profits at a financial institution.

8. This affidavit is submitted in support of an application for a criminal complaint for violations of federal law, including violation of Title 21, United States Code, Sections 841(a)(1), 846, Distribution of, and Possession with Intent to Distribute, Controlled Substances, Conspiracy to commit violations of Controlled Substances offenses, including to Distribute and Possess with Intent to Distribute Controlled Substances; and, Title18, United States Code, Sections 924(c) and 2.

9. The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations set forth above occurred.

## INVESTIGATION PREFACE AND BACKGROUND

### Debrief of Confidential Informant

10. On August 10, 2017, I received information from a confidential informant (herein referred to as CI) regarding a large-scale marijuana dealer. The unknown subject operates a Nissan Maxima, 4 door, bearing a Wisconsin plate # 242-LWL. The CI described the suspect as a white male, late 20's to early 30's, having blonde hair and a beard.

11. That affiant conducted a records check, which revealed the vehicle to be a 2012 Nissan Maxima, 4 door, black in color, bearing Wisconsin plate # 242-LWL. Furthermore, the records revealed the vehicle is owned by a C.M. white female, d.o.b. xx-xx-83 who resides at 1xx W. Walker St., City and County of Milwaukee, WI.

12. The CI advised your affiant that he/she had observed the suspect arrive at a location in Milwaukee within the past week of the CI's statement while utilizing the 2012 Nissan Maxima, 4 door, black in color, bearing Wisconsin plate # 242-LWL.

2

13. That affiant further believes that the informant is a credible person because the informant has been extensively questioned by affiant and other law enforcement officials of the Milwaukee Police Department and North Central HIDTA Drug Gang Task Force as to other drug trafficking and the possession of firearms by prohibited individuals that has occurred and is occurring in the City of Milwaukee; that the information provided by the informant has been verified from other independent sources as well as affiant and found to be reliable and accurate as well as useful in upcoming investigations.

### Initial debrief of Source of Information

14. On September 1, 2017, your affiant has met with a Source of Information, herein referred to SOI. SOI stated he/she met with the distributor personally in August 2016 at a restaurant in Chicago Illinois. SOI stated that he/she does not know the name of the distributor, but calls him "White Boy." SOI described the subject as a white male, dark longer hair, late 20's to early 30's, 5'8", 175 pounds. SOI stated that they talked prices and quantities during the initial conversation together. SOI stated that the price per pound of marijuana was $2,200. SOI also stated that the distributor agreed to bring 50 pounds of marijuana a time and they would be fronted and expected to be paid in full after selling. SOI understood that SOI could be supplied regularly with these quantities under this agreement.

15. SOI stated around April 2017, the first shipment he/she knew of was dropped off by "White Boy" at a location in Milwaukee, Wisconsin. The shipment was delivered on three pallets which contained 50 pounds of marijuana a piece with the total amount being 150 pounds. SOI stated that he/she personally observed the three pallets of marijuana located inside a Milwaukee, WI residence.

16. SOI described that he/she had recently observed "White Boy" arrive at a Milwaukee residence 30 days prior to September 1, 2017. SOI stated that "White Boy" operated a vehicle described as a 2009-2012, black in color Nissan, 4 door, bearing WI plates # 242LWL. SOI stated that he/she observed "White Boy" park the vehicle in front of the Milwaukee location. SOI then observed "White Boy" exit the vehicle and go to the trunk where he removed a large bag wrapped in what appeared to be foil material.

17. Your affiant believes that the source of information is a credible person because the source has been extensively questioned by affiant and other law enforcement officials of the Milwaukee Police Department as to other drug trafficking and the possession of firearms by prohibited individuals that have occurred and is occurring in the City of Milwaukee; that the information provided by the source has been verified from other independent sources as well as affiant and found to be reliable and accurate as well as useful in upcoming investigations.

3

### Initial Surveillance of Nissan Maxima bearing WI plates #242LWL

18. On August 14, 2017, at around 2:35 p.m., I located the suspect vehicle **2012 Nissan** Maxima, 4 door, black in color, bearing Wisconsin plate # 242-LWL. The vehicle was located in a parking lot to the west of 1xx W. Walker St., City and County of Milwaukee. The location is a multiple unit and floor apartment complex. The parking lot consists of around 30-40 parking spots which appear to be utilized by subjects living in the building. The suspect vehicle was parked on the northwest side of the parking lot and faced east;

19. At approximately 3:05 p.m., I observed a subject walking in the parking lot toward the suspect vehicle. The subject can be described as a white male, around 30 years of age, 5"10, 175 pounds, full beard with dark hair. Subject was wearing a blue baseball hat, white short sleeve shirt, blue shorts and black shoes.

### PROBABLE CAUSE & INVESTIGATION

### Identification of "White Boy"

20. On around November 15, 2017, I received information from a Reliable Citizen Informant, herein referred to as RCI, regarding the identity of "White Boy." The RCI provided the name "Josef Habib" to affiant and investigators. The RCI had direct contact with Habib during a professional encounter where the RCI was provided the name "Josef Habib."

21. Your affiant provided the name "Josef Habib" to an analyst at North Central HIDTA. Shortly thereafter, your affiant received a full name, date of birth, and driver's license photograph of a subject identified as Josef K. Habib, white male, d.o.b xx-xx-89. Habib listed a current address of 25xxx Sweet Myrtle Square, Aldie, Virginia. Your affiant conducted an extensive search of all records received regarding the identity of Josef K. Habib, white male, d.o.b xx-xx-89, which revealed no association to the City of Milwaukee or State of Wisconsin.

22. Your affiant reviewed the Virginia Driver's License photograph and positively identified Josef K. Habib, white male, d.o.b xx-xx-89 as the subject affiant had previously observed on surveillance operating the vehicle identified as 2012 Nissan Maxima, 4 door, black in color, bearing Wisconsin plate # 242-LWL.

23. That affiant provided the same Virginia Driver's License photograph to the SOI. The SOI positively identified Josef K. Habib, white male, d.o.b xx-xx-89 as the subject SOI knows as "White Boy."

24. That affiant received a Global Positioning System (GPS) Order on September 13, 2017 for the vehicle identified as 2012 Nissan Maxima, 4 door, black in color, bearing Wisconsin plate # 242-LWL that Josef K. Habib operates.

25. A review of GPS data revealed a distinct pattern of the 2012 Nissan Maxima, 4 door, black in color, bearing Wisconsin plate # 242-LWL traveling to the location identified as 42xx

S. Ravinia Drive #xxx, Greenfield Wisconsin. That affiant was able to determine that the location is described as an apartment condominium complex consisting of eight units which have attached and accessible garages to each unit. There are four garages attached on both the east and west side of the complex essentially splitting the complex into two sides. Each side has four attached garages that have additional parking spaces and a small lot directly outside.

26. Your affiant observed that the 2012 Nissan Maxima, 4 door, black in color, bearing Wisconsin plate # 242-LWL arrived at 42xx S. Ravinia Drive #xxx, Greenfield Wisconsin and leave after a short duration of time. The activity at this specific location was documented starting on September 9, 2017 and lasted to October 25, 2017. The average duration of the stop was approximately (10) ten minutes according to the GPS information. Based upon my training, experience, and familiarity with the investigation, I believe that this location served as a "stash house" for Habib.

27. On October 9, 2017, affiant conducted surveillance of the 2012 Nissan Maxima, 4 door, black in color, bearing Wisconsin plate # 242-LWL.

28. At around 4:52 p.m., officers observed the 2012 Nissan Maxima, 4 door, black in color, bearing Wisconsin plate # 242-LWL, driven by Josef K. Habib, arrive at 42xx S. Ravinia Drive #xxx, Greenfield Wisconsin. The vehicle arrived in the lot and opened the attached parking garage to unit # xxx from within the vehicle using a garage door opener. Habib then backed the Nissan Maxima into the garage and closed the overhead door. At around 5:01 p.m., the garage door to unit #xxx opened up and officers observed the 2012 Nissan Maxima, 4 door, black in color, bearing Wisconsin plate # 242-LWL exit the garage, and occupied only by Josef K. Habib. The garage door again closed using a garage door opener inside the vehicle. Josef K. Habib, drove away from the location. The total amount of time at 42xx S. Rivinia Drive #xxx Greenfield Wisconsin was approximately nine minutes from arrival to departure.

29. After leaving the residence, Habib parked at 1xx W. Walker Street, Milwaukee WI. Habib exited the vehicle and walked along the south side of the apartment complex until he reached the back door of the complex. Habib carried a dark colored backpack which contained unknown contents.

30. Your affiant has maintained a log of information provided by the GPS on the vehicle 2012 Nissan Maxima, 4 door, black in color, bearing Wisconsin plate # 242-LWL. The vehicle was at the location of 42xx S. Ravinia Drive #xxx, Greenfield Wisconsin a total of (22) twenty-two times between September 9, 2017, to October 25, 2017.

31. Your affiant had observed a change in pattern according to the GPS on the 2012 Nissan Maxima, 4 door, black in color, bearing Wisconsin plate # 242-LWL which was previously traveling to the location identified as 42xx S. Ravinia Drive #xxx, Greenfield Wisconsin. That affiant determined the vehicle was now traveling to the address of 41xx W. Hillcrest Drive #xxx, Greenfield Wisconsin. That affiant was able to determine that the location is described as an apartment condominium complex consisting of multiple units which have

both attached and accessible garages to each unit. That the two apartments listed above are included in the same apartment complex system which is named Ravinia Apartments.

32. Your affiant has maintained a log of information regarding the GPS unit on the 2012 Nissan Maxima, 4 door, black in color, bearing Wisconsin plate # 242-LWL and its specific activity to the location of 41xx W. Hillcrest Drive #xxx, Greenfield Wisconsin.

33. Your affiant noticed that the 2012 Nissan Maxima, 4 door, black in color, bearing Wisconsin plate # 242-LWL arrived at the location of 41xx W. Hillcrest Drive #xxx, Greenfield Wisconsin and left after a short duration of time. The activity at this specific location was documented starting on October 31, 2017 until the present. The average duration of the stop was approximately (10) ten minutes according to the GPS information. In addition, on November 29, 2017, and December 4, 2017, respectively, your affiant observed Habib at this location for short durations.

34. Your affiant met with the previously mentioned Reliable Citizen Informant (RCI) and was provided remote access to a surveillance camera system located in the apartment complex of 117 W. Walker Street, Milwaukee Wisconsin. Throughout November, December and early January Habib was observed exiting unit xxx carrying items your affiant believes is consistent with a suspected amount of marijuana.

### January 8, 2018

35. On this date, your affiant was present at 41xx W. Hillcrest Drive #xxx, Greenfield Wisconsin conducting surveillance. Affiant observed a Toyota Highlander bearing a Virginia license plate 18255HM pull into the open garage door for this location. The garage door then closed. The door remained closed for approximately 15 minutes. At this time, the garage door opened and the Highlander exited the garage and drove off in a west bound direction. Affiant then observed Josef K. Habib, exit this premises by walking out of the open garage. Habib then walked to his Nissan Maxima and drove said vehicle into the garage and thereafter shut the garage door thereafter. The garage door remained closed for approximately 20 minutes. Thereafter, the garage door opened and Habib drove in northbound direction.

36. Affiant reports that at 41xx West Hillcrest, the Nissan Maxima was stopped. As Officers approached Habib, one officer smelled marijuana. As a result of this, the vehicle was searched. Your affiant was present to search the vehicle. Upon entering therein, your affiant also smelled marijuana. A search of the vehicle revealed in the back seat behind the passenger seat a large black garbage bag surrounding a squared off box. Contained in the box were approximately four foil sealed packages. One of the packages was opened and found to contain suspected Marijuana. Officer Conway approximated that each package contained approximately five pounds of marijuana. Thus, the approximate weight of the marijuana in the interior of the vehicle was 20 pounds.

37. Special Agent Bodo Gajevic, State of Wisconsin Department of Justice opined that based on his training and experience, he believes this marijuana to be high-grade marijuana. At

6

a wholesale price, the street value of five pounds of high-grade marijuana is $25,000.00. Approximating the 20 pounds of marijuana recovered from the interior of the vehicle, the wholesale street value would be $100,000.00.

38. Officer Conway is trained in the administration of the Duquenious Levine field test which is a presumptive test for the presence of tetrahydrocannabinol, the active ingredient in marijuana. Officer Conway subjected a sample of the marijuana recovered from the vehicle to the Duquenious Levine field test and received a result that was positive for the presence of tetrahydrocannabinol.

39. An officer asked Habib if anyone else was inside of 41xx W. Hillcrest Drive #xxx, Greenfield Wisconsin to which Habib responded that it is not his apartment and he doesn't know if anyone else was inside the premises. It should be noted that the traffic stop of the Maxima occurred on the same block as 41xx W. Hillcrest Drive #xxx, Greenfield, Wisconsin and within eye sight of said premises. Fearing potential destruction of evidence, officers forced entry into 41xx W. Hillcrest Drive #xxx, Greenfield Wisconsin in order to secure the premises while officers applied for a search warrant. No search occurred.

40. The above-referenced Highlander was also searched on this date. Officers recovered 32 individual bags containing approximately 160 pounds of marijuana and three vacuum sealed bags, each containing approximately $100,000 in U.S. currency. A sample of the marijuana recovered from the Highlander tested positive for the presence of THC.

41. After a search warrant had been obtained, a search of 41xx W. Hillcrest Drive #xxx, Greenfield, WI commenced. Upon entering 41xx W. Hillcrest Drive #xxx, Greenfield, Wisconsin, Special Agent Jeffrey Hale, State of Wisconsin Department of Justice, observed that Apartment #xxx appeared to be a stash house for the organization. SA Hale observed that there was no furniture in the apartment, and it appeared on initial observation that nobody was living there. There was no furniture in any of the rooms, and no clothing was observed in the closets.

42. In the living room area of the apartment, SA Hale observed that there were numerous silver colored packages laying on the living room floor. In the south bedroom, there were three large plastic garbage bags that appeared to be full. One of the bags was open, and upon observation, contained several silver colored packages. In the north bedroom walk in closet, there was several silver colored packages stacked in the closet of the bedroom.

43. SA Hale and other officers observed that upon searching the kitchen cabinets, there was nothing in the cabinets. There was no food in the refrigerator, and nothing with any names or documentation as to who had control of the residence was located during the search. There was no clothing in the residence, and no personal items in the bathrooms.

44. During the search, officers recovered from the living room a total of six foil bags containing packaged marijuana. From the south bedroom, officers recovered a total of nineteen foil bags contained in three separate black garbage bags. From the north

7

bedroom walk in closet, officers recovered a total of twenty foil bags. The total weight of packaged marijuana recovered from 41xx W. Hillcrest Drive #xxx, Greenfield Wisconsin was approximately 206 pounds.

45. Officers conducted a thorough search of the Nissan Maxima, and the search revealed eleven total foil bags contained within two black plastic garbage bags contained within the trunk, and four total foil bags contained within a black plastic garbage bag. The total weight of packaged marijuana recovered from the Nissan Maxima was approximately 64 pounds.

46. A search warrant was also obtained for Habib's residence of 1xx W. Walker St. #xxx. Officers located on the premises the following: (1) A total of $21,300 in U.S. currency; (2) 16.11 pounds of marijuana; and, (3) a Sig Sauer .40 cal Model P320 loaded with 8 .40 caliber rounds (1 in chamber). Approximate five pounds of marijuana was located in a crawlspace underneath the bedroom area. The firearm was located on the floor behind what would be the head of the bed. Authorities also recovered on the premises a money counter in the living room, multiple handwritten drug ledgers, two gram scales in the residence, a food saver appliance with food saver bags, and several pieces of what appeared to be used drug packaging material stuffed inside a dryer and washer.

## CONCLUSION

47. Based on the forgoing, I believe there is probable cause to believe that Josef K. Habib and others have committed violations of federal law, including Title 21, United States Code, Sections 841 and 846; and, Title 18, United States Code, Sections 924(c), and 2.

8

Case 2:18-cr-00016-LA   Filed 01/09/18   Page 9 of 9   Document 1