# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   v.                                        **Case No. 18-CR-16**

**JOSEF HABIB**
        **Defendant.**

---

## DECISION AND ORDER

Defendant Josef Habib moves for early termination of his supervised release. The government opposes the motion. For the reasons that follow, I deny the motion but without prejudice to its renewal at a later date.

**I.**

The government charged defendant with conspiracy to possess with intent to distribute and distribute 100 kilograms or more of marijuana, 21 U.S.C. §§ 846, 841(b)(1)(B); conspiracy to commit money laundering, 18 U.S.C. § 1956(h); two counts of possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c). (R. 47.) Pursuant to an agreement with the government, defendant pleaded guilty to the drug conspiracy count. (R. 311.)

As detailed in defendant's pre-sentence report (PSR), in 2017 law enforcement initiated an investigation into a large-scale marijuana trafficking organization involving defendant and others. The investigation revealed that defendant acquired large shipments of marijuana from an out-of-state source, later identified as Robert Malkin. (PSR ¶ 13.) Malkin shipped or caused to be shipped in excess of 1000-pound quantities of marijuana in semi-tractor trailers from

California to the east coast, with the drugs repackaged in Maryland and distributed nationwide, including to Milwaukee. The drug proceeds, millions in cash, were then secreted in another semi-tractor trailer and shipped to California. Malkin recruited other co-conspirators, paid the organization's expenses, rented stash houses, and traveled with many of the co-conspirators on drug related trips. (PSR ¶ 24.) Defendant ran the Milwaukee operation and also participated in the east coast activity. (PSR ¶ 25.)

In January 2018, after conducting surveillance at a suspected stash location in Wisconsin, police stopped defendant, and a search of his vehicle revealed approximately 29 kilograms of marijuana. (PSR ¶¶ 14-16.) Search of a related vehicle turned up approximately 72 kilograms of marijuana and over $300,000 in cash proceeds of defendant's sale of Malkin's marijuana. (PSR ¶ 17.) On executing search warrants at the stash location and at defendant's residence, law enforcement located and seized another 100 kilograms of marijuana, in excess of $21,500 in cash, and a loaded .40 caliber pistol. (PSR ¶ 18.)

After his arrest and detention, defendant engaged in hundreds of calls with co-conspirator Mohammed Omar, directing Omar to wire tens of thousands of dollars of defendant's money to different females, including another co-defendant, Lachelle Cook, and a law office on defendant's behalf. The females then utilized the monies to purchase cellular telephones for co-defendant Corianne Markowski, defendant's then-girlfriend, and others, or supplied the monies directly to Markowski. (PSR ¶ 28.)

Based on the totality of the investigation, defendant was responsible for the distribution of approximately 2000 kilograms of marijuana. (PSR ¶ 29.) The parties further agreed that he occupied a managerial role in the offense. (PSR ¶¶ 9, 37.)

Thirty-one years old at the time of sentencing, defendant had no prior record. (PSR ¶¶

2

47, 54.) Born in Germany, defendant came to the United States with his parents at the age of two or three, and he and his family became naturalized citizens. (PSR ¶ 55.) Defendant graduated from high school and college, but compiled a relatively limited legitimate work record. (PSR ¶¶ 74-81.) He admitted supporting himself selling marijuana. (PSR ¶ 80.)

The sentencing guidelines called for a prison term of 121-151 months. The government recommended 90 months, the defense 72. (PSR ¶¶ 10, 86.) I agreed that a significant prison sentence was necessary to reflect the seriousness of the offense, given the scope of the drug trafficking operation, defendant's managerial role, and his possession of a firearm. On the other hand, the record contained no evidence of firearm use, threats, or violence related to the offense, and defendant had no prior convictions. Due to delays caused in part by the COVID-19 pandemic, he spent about 3-½ years detained in local jails, harder time than that spent in a prison facility. Under all the circumstances, I found a sentence of 72 months sufficient but not greater than necessary to satisfy the purposes of sentencing. I further imposed a four-year supervised release term, the minimum required by statute, finding such a term sufficient to ensure monitoring, treatment, and legitimate employment. In addition to the "standard" conditions, I required defendant to comply with drug testing and treatment, and to participate in a cognitive intervention program. (R. 350.)

Defendant completed the prison sentence and commenced supervision in January 2023. Defendant is supervised in the Eastern District of Virginia, where he now lives, although jurisdiction remains with this court. Defendant filed the instant motion for early termination on March 11, 2024. (R. 478.) The government responded in opposition on April 16, 2024 (R. 481), and defendant replied on May 14, 2024 (R. 485). The matter is ready for decision.

**II.**

Pursuant to 18 U.S.C. § 3583(e),

The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) —

(1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]

The statute's introductory clause directs the court to consider: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence imposed—(B) to afford adequate deterrence to criminal conduct, (C) to protect the public from further crimes of the defendant, and (D) to provide the defendant with needed correctional treatment; (4) the kinds of sentences available; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a). "[A]lthough a court need not make explicit findings as to each of the factors, the record must reveal that the court gave consideration to the § 3553(a) factors." United States v. Lowe, 632 F.3d 996, 998 (7th Cir. 2011).

The court may grant early termination under sub-section (e)(1) if: (1) the defendant has completed at least one year of supervision, (2) the government has been given notice and an opportunity to be heard, and (3) termination is warranted based on the defendant's conduct and the interest of justice. United States v. Lomas, No. 21-cr-0236, 2024 U.S. Dist. LEXIS 68820, at *2-3 (E.D. Wis. Apr. 16, 2024); United States v. Witzlib, No. 13-CR-99, 2016 U.S. Dist. LEXIS 65551, at *4 (E.D. Wis. May 18, 2016). Defendant has completed more than one

year of supervision, and the government has been afforded a chance to respond. The issue is whether termination is warranted by defendant's conduct and the interest of justice.

The district court possesses wide discretion in making this determination. United States v. Hook, 471 F.3d 766, 771 (7th Cir. 2006). In exercising that discretion, courts have generally concluded that the conduct of the defendant sufficient to warrant termination should include more than mere compliance with the conditions of supervised release, as that is what is expected of all persons on supervision. Witzlib, 2016 U.S. Dist. LEXIS 65551, at *4-5; see also United States v. Taylor, 729 Fed. Appx. 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination under 18 U.S.C. § 3583(e)."). Courts have tended to grant early termination in cases involving some new or unforeseen circumstance, which may include exceptionally good behavior, or where continued supervision would hinder rather than foster the defendant's rehabilitation.[1] United States v. Adams, No. 06-CR-205, 2022 U.S. Dist. LEXIS 72494, at *7 (E.D. Wis. Apr. 19, 2022).

The Judicial Conference recommends consideration of various factors in deciding whether to approve early termination, including: (1) stable community reintegration (e.g., residence, family, employment); (2) progressive strides toward supervision objectives and compliance with all conditions of supervision; (3) no aggravated role in the offense of conviction, particularly large drug or fraud offenses; (4) no history of violence; (5) no recent arrests or convictions; (6) no recent evidence of alcohol or drug abuse; (7) no recent psychiatric

---

[1] "This is not to say that the defendant must always demonstrate exceptional circumstances in order to gain early termination. The attached text is descriptive of the manner in which courts have exercised their discretion in considering such motions." United States v. Spinks, No. 08-CR-161, 2016 U.S. Dist. LEXIS 83166, at *2 n.2 (E.D. Wis. June 27, 2016).

5

episodes; (8) no identifiable risk to the safety of any identifiable victim; and (9) no identifiable risk to public safety. United States v. Etheridge, 999 F. Supp. 2d 192, 195 (D.D.C. 2013); see also Guide to Judiciary Policy, Volume 8: Probation and Pretrial Services, Part E: Post-Conviction Supervision, § 360.20(c) ("At 18 months, there is a presumption in favor of recommending early termination for persons who meet [specified] criteria[.]"); U.S.S.G. § U.S.S.G. § 5D1.2 cmt. n.5 (encouraging early termination in appropriate cases, e.g., where the defendant successfully completes a treatment program reducing the risk of recidivism).

The defendant bears the burden of demonstrating that early termination is warranted. Witzlib, 2016 U.S. Dist. LEXIS 65551, at *5. The court need not hold a hearing before denying a request for early termination. United States v. Reagan, 162 Fed. Appx. 912, 913 (11th Cir. 2006) (citing United States v. Nonahal, 338 F.3d 668, 671 (7th Cir. 2003)).

**III.**

Defendant indicates that he has fully complied with his conditions, avoided drugs, obtained his commercial driver's license, works full-time as a truck driver, and maintains a stable residence and family life with his mother and sister. He contends that terminating supervised release would better enable him to support himself financially, allowing him to qualify for better routes if able to travel freely throughout the country. Defendant further notes that this was his first and only conviction, a non-violent marijuana case, and he now resides in an area with relaxed marijuana laws, making it unlikely he will re-offend. Finally, defendant indicates that his experience in the system changed him profoundly, setting him on the stable path he is on today. Defendant concludes that he has gone far beyond the requirements of supervision, fully reintegrated into society with no need for further programming or treatment, and is an ideal candidate for early termination. (R. 478 at 2.)

6

The government responds that defendant's conduct, while commendable, is mostly required by his rules and is alone insufficient to support early termination. (R. 481 at 8-9.) The government further argues that the § 3553(a) factors weigh against the request. While defendant characterizes this as "solely a marijuana case," the evidence showed that defendant participated in an extensive, nation-wide drug trafficking organization involving millions of dollars and thousands of kilograms of marijuana; he occupied a leadership role, recruited others, possessed a firearm in connection with the offense, and laundered the proceeds after he had been arrested and detained. The government concludes that continued supervision is needed to reflect the seriousness of the offense. (R. 481 at 9.)

In reply, defendant complains that the government largely ignores his post-release conduct, focusing instead on the seriousness of the offense, which was more than adequately addressed by the prison sentence. He contends that he had no aggravated role in the offense, no history of violence, and no other arrests or convictions, and currently has no substance abuse or mental health issues. He concludes that the government has identified no public safety risk and that the court should accordingly grant his motion. (R. 485 at 1.)

**IV.**

While defendant's performance has been commendable, "the court expects those on supervision to follow the rules, abstain from illegal drug use, work, and attend to their family responsibilities." United States v. Inthachack, No. 11-CR-133, 2022 U.S. Dist. LEXIS 77421, at *5-6 (E.D. Wis. Apr. 28, 2022). Defendant fails to demonstrate that his conduct warrants early termination at this point, a little over one year into the four-year term.

Defendant's contention that termination could permit him to advance at work is vague and undeveloped. Defendant's conditions permit travel outside the district with permission of

7

the probation officer or the court, and he gives no indication that such permission has—or will be—unreasonably refused. See United States v. White, No. 06-CR-50, 2012 U.S. Dist. LEXIS 151054, at *7-8 (E.D. Wis. Oct. 19, 2012) (denying early termination where the defendant presented no evidence of interference with work as a CDL truck driver, and noting that he could if his fears materialized seek appropriate modification of travel restrictions or possibly renew his request for termination). Defendant points to no other new or unforeseen circumstances supporting a reduction of the supervision term.[2]

The § 3553(a) factors also weigh against termination at this point. While it is true that defendant has no prior record, this must be viewed in the context of his years-long participation in a large-scale drug trafficking operation. The offense was further aggravated by defendant's managerial role, possession of a firearm, and post-arrest attempts to disburse funds. See 18 U.S.C. § 3553(a)(1).[3] The PSR also reported daily use of marijuana prior to his arrest in this case. (PSR ¶ 72.) While it appears defendant has been able to abstain from drugs and otherwise follow the law during his short time on supervision, it is too soon to declare further supervision unnecessary to protect the public, deter, and provide any needed correctional treatment. 18 U.S.C. §§ 3553(a)(2)(B), (C), (D). While defendant faults the government for

---

[2]Defendant indicates that his extended pre-trial detention caused him to miss out on early release programs (R. 478 at 2), but he does not explain how this supports early termination of supervised release now. Defendant also indicates that he provided the petition to his supervising officer, who does not oppose the petition and defers to the court's discretion. (R. 478 at 1.) The government responds that the supervising officer, while acknowledging defendant's compliance, does not support early termination at this point, when defendant has served less than 50% of the term imposed. (R. 481 at 2 n.1.) Defendant does not dispute this in reply.

[3]Defendant notes the recent proposal to reclassify marijuana as a schedule III drug. (R. 485 at 1.) This re-evaluation of the federal government's stance on marijuana, long controversial, does not undermine the seriousness of the crime defendant committed here.

8

failing to identify any public safety risk, it is defendant who bears the burden of demonstrating that early termination is justified. White, 2012 U.S. Dist. LEXIS 151054, at *5 (collecting cases). He has not met that burden at this time.[4]

**V.**

**THEREFORE, IT IS ORDERED** that defendant's motion (R. 478) is denied. This denial is without prejudice to renewal after defendant has completed two years of supervision.

Dated at Milwaukee, Wisconsin, this 22nd day of May, 2024.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge

---

[4]Defendant cites statistics showing that offenders granted early termination re-offend at lower rates. (R. 478 at 2.) This data, which suggest that courts generally do a good job of identifying appropriate candidates for early termination, do not necessary support relief in any individual case.

9