# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

     **v.**
                                 **Case No. 18-CR-16**

**JOSEF HABIB**
        **Defendant.**

---

## DECISION AND ORDER

For a third time, defendant Josef Habib moves for early termination of supervised release. I again deny his request.

## I.

The court may, after considering the pertinent sentencing factors in 18 U.S.C. § 3553(a), terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervision if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice. 18 U.S.C. § 3583(e)(1). The district court possesses wide discretion in determining whether termination would be in the interest of justice. United States v. Hook, 471 F.3d 766, 771 (7th Cir. 2006). In exercising that discretion, however, courts have generally concluded that the conduct of the defendant sufficient to warrant termination should include more than mere compliance with the conditions of supervised release, as that is what is expected of all persons on supervision. See United States v. Taylor, 729 Fed. Appx. 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination under 18 U.S.C. § 3583(e)."); United States v. Malutan, No. 1:20-CR-31-HAB, 2025 U.S. Dist.

LEXIS 38406, at *4 (N.D. Ind. Mar. 4, 2025) ("Generally, the conduct of a defendant must establish more than simply successfully complying with the terms of his supervision, for if this were simply enough, nearly every defendant who avoided revocation would be eligible for early termination.") (internal quote marks omitted). Courts have tended to grant early termination in cases involving some new or unforeseen circumstance, which may include exceptionally good behavior, or where continued supervision would hinder rather than foster the defendant's rehabilitation. United States v. Terry, No. 18-CR-163, 2024 U.S. Dist. LEXIS 92410, at *8 (E.D. Wis. May 22, 2024). The defendant bears the burden of demonstrating that early termination is warranted. United States v. George, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021).

**II.**

In the underlying case, the government charged defendant with conspiracy to possess with intent to distribute and distribute 100 kilograms or more of marijuana, 21 U.S.C. §§ 846, 841(b)(1)(B); conspiracy to commit money laundering, 18 U.S.C. § 1956(h); two counts of possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c). (R. 47.) Pursuant to an agreement with the government, defendant pleaded guilty to the drug conspiracy count. (R. 311.)

As detailed in the pre-sentence report (PSR), in 2017 law enforcement initiated an investigation into a large-scale marijuana trafficking organization involving defendant and others. The investigation revealed that defendant acquired large shipments of marijuana from an out-of-state source, later identified as Robert Malkin. (PSR ¶ 13.) Malkin shipped or caused to be shipped in excess of 1000-pound quantities of marijuana in semi-tractor trailers from California to the east coast, with the drugs repackaged in Maryland and distributed nationwide,

2

including to Milwaukee. The drug proceeds, millions in cash, were then hidden in another semi-tractor trailer and shipped to California. Malkin recruited other co-conspirators, paid the organization's expenses, rented stash houses, and traveled with many of the co-conspirators on drug related trips. (PSR ¶ 24.) Defendant ran the Milwaukee operation and also participated in the east coast activity. (PSR ¶ 25.)

In January 2018, after conducting surveillance at a suspected stash location in Wisconsin, police stopped defendant, and a search of his vehicle revealed approximately 29 kilograms of marijuana. (PSR ¶¶ 14-16.) Search of a related vehicle turned up approximately 72 kilograms of marijuana and over $300,000 in drug proceeds. (PSR ¶ 17.) On executing search warrants at the stash location and at defendant's residence, law enforcement located and seized another 100 kilograms of marijuana, in excess of $21,500 in cash, and a loaded .40 caliber pistol. (PSR ¶ 18.)

After his arrest and detention, defendant engaged in hundreds of calls with co-conspirator Mohammed Omar, directing Omar to wire tens of thousands of dollars to different females, including another co-defendant, Lachelle Cook, and a law office on defendant's behalf. The females then used the money to purchase cellular telephones for co-defendant Corianne Markowski, defendant's then-girlfriend, and others, or supplied the money directly to Markowski. (PSR ¶ 28.)

Based on the totality of the investigation, the PSR found defendant responsible for the distribution of approximately 2000 kilograms of marijuana. (PSR ¶ 29.) The parties further agreed that he occupied a managerial role in the offense. (PSR ¶¶ 9, 37.)

Thirty-one years old at the time of sentencing, defendant had no prior record. (PSR ¶¶ 47, 54.) Born in Germany, he came to the United States with his parents at the age of two or

3

three, and he and his family became naturalized citizens. (PSR ¶ 55.) Defendant graduated from high school and college, but compiled a relatively limited legitimate work record. (PSR ¶¶ 74-81.) He admitted supporting himself selling marijuana. (PSR ¶ 80.)

The sentencing guidelines called for a prison term of 121-151 months; the government recommended 90 months, the defense 72. (PSR ¶¶ 10, 86.) On August 19, 2021, I sentenced defendant to 72 months in prison. (R. 349.) I agreed that a significant prison sentence was necessary to reflect the seriousness of the offense, given the scope of the drug trafficking operation, defendant's managerial role, and his possession of a firearm. On the other hand, the record contained no evidence of firearm use, threats, or violence related to the offense, and defendant had no prior convictions. Due to delays caused in part by the COVID-19 pandemic, he spent about 3-½ years detained in local jails, harder time than that spent in a prison facility. Under all the circumstances, I found a sentence of 72 months sufficient but not greater than necessary to satisfy the purposes of sentencing. I further imposed a 4-year supervised release term, finding a term of this length sufficient to ensure monitoring, treatment, and legitimate employment. In addition to the "standard" conditions, I required defendant to comply with drug testing and treatment, and to participate in a cognitive intervention program. (R. 486 at 3.)

Defendant completed the prison sentence and commenced supervision in January 2023. Although he is supervised in the Eastern District of Virginia, where he lives, jurisdiction remains with this court. (R. 486 at 3.)

On March 11, 2024, defendant filed his first motion for early termination. He indicated that he had fully complied with his conditions, avoided drugs, obtained his commercial driver's license, worked full-time as a truck driver, and maintained a stable residence and family life with his mother and sister. He argued that terminating supervised release would better enable

4

him to support himself financially, allowing him to qualify for better routes if able to travel freely throughout the country. Defendant further noted that this was his first and only conviction, a non-violent marijuana case, and that he now lived in an area with relaxed marijuana laws, making it unlikely he would re-offend. Finally, defendant indicated that his experience in the system changed him profoundly, setting him on a stable path. Defendant concluded that he had gone far beyond the requirements of supervision, fully reintegrated into society with no need for further programming or treatment, and was an ideal candidate for early termination. (R. 478 at 2.) The government opposed the motion. (R. 481.)

On May 22, 2024, I denied the motion. I noted that, while defendant's performance had been commendable, "the court expects those on supervision to follow the rules, abstain from illegal drug use, work, and attend to their family responsibilities." United States v. Inthachack, No. 11-CR-133, 2022 U.S. Dist. LEXIS 77421, at *5-6 (E.D. Wis. Apr. 28, 2022). I further noted that defendant's contention that termination could permit him to advance at work was vague and undeveloped. Defendant's conditions permit travel outside the district with permission of the probation officer or the court, and he gave no indication that such permission had—or would be—unreasonably refused. See United States v. White, No. 06-CR-50, 2012 U.S. Dist. LEXIS 151054, at *7-8 (E.D. Wis. Oct. 19, 2012) (denying early termination where the defendant presented no evidence of interference with work as a CDL truck driver, and noting that he could if his fears materialized seek appropriate modification of travel restrictions). Defendant pointed to no other new or unforeseen circumstances supporting a reduction of the supervision term. (R. 486 at 7-8.)

I concluded that the § 3553(a) factors also weighed against termination at that point. While defendant had no prior record, this had to be viewed in the context of his years-long

participation in a large-scale drug trafficking operation. The offense was further aggravated by defendant's managerial role, possession of a firearm, and post-arrest attempts to disburse funds. See 18 U.S.C. § 3553(a)(1). The PSR also reported daily use of marijuana prior to his arrest in this case. (PSR ¶ 72.) While it appeared defendant had been able to abstain from drugs and otherwise follow the law during his short time on supervision, it was too soon to declare further supervision unnecessary to protect the public, deter, and provide any needed correctional treatment. 18 U.S.C. §§ 3553(a)(2)(B), (C), (D). Defendant faulted the government for failing to identify any public safety risk, but it was defendant who bore the burden of demonstrating that early termination was justified, White, 2012 U.S. Dist. LEXIS 151054, at *5 (collecting cases), which he had not done. (R. 486 at 8-9.) I accordingly denied the motion. (R. 486 at 9.)

On January 7, 2025, defendant filed a second motion for early termination. In this filing, he claimed that he had completed all terms of supervision, had no need for programming or treatment, and had minimal special conditions. (R. 517 at 1.) He further stated:

> Mr. Habib has completed every condition asked of him and has gone far beyond the requirements of his supervision. He has fully reintegrated into society and is a valued worker, family member, and citizen. He has achieved stable community reintegration in terms of housing, family, and employment. He is in full compliance with all terms of supervision. He has no prior criminal history, no violence in this offense, and is not using controlled substances. He has no psychiatric issues. He enjoys the support of his community. He is an ideal candidate for early termination of supervised release based on every factor the Court must consider.

(R. 517 at 1.) The government again opposed termination. (R. 523.)

On March 12, 2025, I denied the motion. (R. 526.) While defendant claimed that he had "gone far beyond" the requirements of supervised release, he failed to explain how that was so. (R. 526 at 8.) "He relie[d] on his compliance and stable reintegration, but the court expects

6

those on supervision to follow the rules, abstain from illegal drug use, work, and attend to their family responsibilities." Terry, 2024 U.S. Dist. LEXIS 92410, at *9-10 (internal quote marks omitted). As compared to his first request, this motion offered only generalities. See United States v. Kalkounos, No. 06-cr-102-pp, 2018 U.S. Dist. LEXIS 27591, at *4 (E.D. Wis. Feb. 21, 2018) ("The defendant carries the burden of proving that he has done more than just follow the rules."). Defendant did not, for instance, present evidence of additional accomplishments or elaborate on his previous contention that supervision interfered with his employment. (R. 526 at 8.)

Nor did defendant offer any basis for reevaluating the § 3553(a) factors. (R. 526 at 8-9.) While defendant's compliance over a two-year period and his clean prior record suggested a reduced need to protect the public and deter him, see 18 U.S.C. §§ 3553(a)(2)(B), (C), this had to be balanced against the nature of the offense, see 18 U.S.C. § 3553(a)(1). Defendant participated in a large-scale marijuana trafficking operation over an extended period of time, occupying a managerial position, possessing a firearm, and attempting to disburse funds even after his arrest. Defendant also admitted regular use of marijuana for years preceding his arrest in this case. See 18 U.S.C. § 3553(a)(2)(D). While it appeared he had been able to abstain during the supervision term, he offered no evidence that he had completed treatment or other programming reducing the risk to the public. See 18 U.S.C. § 3553(a)(5); U.S.S.G. § 5D1.2 cmt. n.5. Under these circumstances, the mere passage of time did not suffice. See United States v. Hill, No. 08-374, 2025 U.S. Dist. LEXIS 11018, at *3 (W.D. Pa. Jan. 22, 2025) ("Other than the passage of time, Hill has not pointed to any circumstance that changes this court's weighing of the § 3553 factors.").

7

### III.

In the instant motion, defendant indicates that he has completed more than three years of supervision without any violations. He further indicates that he has maintained good behavior, avoided any positive drug tests, and made positive strides towards rehabilitation and reintegration. He concludes that continued supervision is no longer necessary to serve the interests of justice, and that early termination would be consistent with the § 3553(a) factors. (R. 529 at 1.)

As with the second motion, defendant offers only generalities. While it is to his credit that he has maintained compliance for another year, the court expects as much. See Taylor, 729 Fed. Appx. at 475. Defendant does not elaborate on his rehabilitative efforts, and he makes no claim that continued supervision would hinder those efforts. See George, 534 F. Supp. 3d at 927 ("George's skeletal motion was facially inadequate to carry his burden.").

Finally, defendant again offers no basis for reevaluating the § 3553(a) factors. As discussed above, defendant participated in a large-scale marijuana trafficking operation over an extended period of time, occupying a managerial position, possessing a firearm, and attempting to disburse funds even after his arrest. Continued supervision is warranted to protect the public and deter, see 18 U.S.C. §§ 3553(a)(2)(B), (C), and to ensure that he continues to abstain from illegal drug use, see 18 U.S.C. § 3553(a)(2)(D). As I noted in denying the second motion, under the circumstances of this case, the mere passage of time does not change the § 3553(a) analysis. See Hill, 2025 U.S. Dist. LEXIS 11018, at *3; see also Folks v. United States, 733 F. Supp. 2d 649, 651 (M.D.N.C. 2010) ("In the end, Folks seems to rely on the mere passage of time as justification for his early release.").

8

**IV.**

**THEREFORE, IT IS ORDERED** that defendant's motion (R. 529) is denied.

Dated at Milwaukee, Wisconsin, this 5th day of May, 2026.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge

9